**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BAUER RESEARCH FOUNDATION, INC.,**<br>1157 Cookhill Circle<br>Akron, Ohio 44312<br><br>Plaintiff,<br><br>v.<br><br>**CAMBREX CORPORATION,**<br>1 Meadowlands Plaza #1510<br>East Rutherford, NJ 07073<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE<br><br><br><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br><br>(Jury Demand Endorsed Hereon) |

Plaintiff Bauer Research Foundation, Inc. ("BRF"), by and through undersigned counsel, brings this Complaint against Defendant Cambrex Corporation ("Cambrex") and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Cambrex's unauthorized possession, use, disclosure, and transfer of confidential and proprietary information, tangible materials, and manufacturing know-how relating to Nitrosylcobalamin, also known as NO-Cbl.

2. NO-Cbl is a nitric oxide-bound derivative of vitamin B12 that was developed as a potential anticancer therapeutic.

3. BRF's predecessor, BNOAT Oncology, Inc. ("BNOAT"), retained PharmaCore, Inc. ("PharmaCore") to manufacture and perform analytical work concerning NO-Cbl. BNOAT disclosed valuable nonpublic information and tangible materials to PharmaCore for that limited purpose.

4. PharmaCore expressly agreed to maintain BNOAT's information in confidence, use the information and materials only for BNOAT's project, and refrain from providing BNOAT's Active Pharmaceutical Ingredient ("API"), other supplied materials, or materials produced for BNOAT to any third party without BNOAT's prior written consent.

5. PharmaCore also agreed that all data, discoveries, materials, and inventions conceived or developed during and in connection with the project would belong exclusively to BNOAT, and that the principal confidentiality and ownership provisions would survive termination or expiration of the parties' agreement.

6. Cambrex later acquired PharmaCore and obtained possession, custody, control, or access to PharmaCore's NO-Cbl project files, information, samples, materials, personnel, and manufacturing records.

7. In 2026, BRF learned of a new NO-Cbl manufacturing effort at Cambrex involving persons and entities that BRF had not authorized to receive, use, test, manufacture, or possess BRF's trade secrets, confidential information and materials.

8. BRF further learned that Cambrex was analyzing both newly manufactured product and product described as approximately ten years old, creating a reasonable inference that BRF's historical materials, information, or project-generated property had been retained and used.

9. BRF did not authorize Cambrex or any third party to use BRF's confidential NO-Cbl information or materials for the reported manufacturing effort, to disclose that information to unauthorized persons, or to transfer NO-Cbl materials to any third party.

10. BRF seeks damages, declaratory relief, an accounting, and preliminary and permanent injunctive relief to prevent continued use or dissemination, identify all recipients and

transfers, preserve relevant evidence, and restore BRF's control over its tangible property and trade secrets.

## PARTIES

11. Plaintiff Bauer Research Foundation, Inc. ("BRF") is a corporation organized under the laws of the State of Florida, with its principal place of business at 1157 Cookhill Circle, Akron, Ohio 44312.

12. BRF is the successor in interest to BNOAT and owns the contractual rights, confidential information, trade secrets, data, discoveries, materials, and other property at issue in this action.

13. In 2019, BNOAT was dissolved, and its tangible and intangible property, including its intellectual property, trade secrets, contractual rights, data, and materials, was transferred to BRF by action of BNOAT's Board of Directors.

14. Defendant Cambrex is a corporation organized under the laws of Delaware, with its principal place of business at One Meadowlands Plaza, East Rutherford, New Jersey 07073.

15. Cambrex acquired PharmaCore and, upon information and belief, continued or assumed control of PharmaCore's relevant operations, personnel, customer files, project records, samples, materials, and obligations (including those related to BNOAT/BRF).

16. Upon information and belief, Cambrex conducts pharmaceutical-development and manufacturing activities in interstate and foreign commerce.

## JURISDICTION AND VENUE

17. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because BRF asserts a claim under the Defend Trade Secrets Act, which authorizes a private civil action for trade-secret misappropriation under 18 U.S.C. § 1836(b)(1).

18. This Court has supplemental jurisdiction over BRF's state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as BRF's federal claim.

19. This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. This Court has personal jurisdiction over Cambrex because Cambrex acquired or obtained access to the NO-Cbl project and property governed by an Ohio-law agreement containing an exclusive Akron forum-selection provision; communicated with BRF and its representatives in Ohio regarding NO-Cbl; maintained ongoing contacts concerning the project; and committed acts causing injury to BRF's Ohio-based operations.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to BRF's claims occurred in this District and because the injury to BRF's proprietary and contractual rights was directed to and suffered in this District.

22. Venue is independently proper because the PharmaCore agreement provides that any and all disputes arising from or related to its terms and conditions or any quotation thereunder shall be brought exclusively in the state and federal courts located in Akron, Ohio. See the PharmaCore Agreement, p. 3, attached as **Exhibit A**.

23. Assignment to the Eastern Division is proper because Akron is located within the Eastern Division and the agreement selected courts located in Akron.

## FACTUAL ALLEGATIONS

### A. Development of NO-Cbl and BRF's Proprietary Know-How

24. In 1997, Dr. Joseph A. Bauer synthesized NO-Cbl at the University of Akron.

25. U.S. Patent No. 5,936,082 was issued in 1999 concerning the NO-Cbl-related subject matter.

26. The patent did not disclose the complete practical knowledge needed to manufacture NO-Cbl reliably at useful scale, including accumulated process parameters, equipment choices, gas-handling practices, transfer methods, analytical approaches, troubleshooting information, stability information, and lessons learned through development failures and successes.

27. From approximately 2000 through 2008, the development of NO-Cbl progressed from small laboratory quantities to larger quantities suitable for further testing and development.

28. In 2004, Ricerca Biosciences attempted approximately twelve NO-Cbl batches but obtained inconsistent results and remained at milligram scale.

29. In 2009, the University of Akron licensed the NO-Cbl technology to BNOAT.

30. In 2012, BNOAT engaged DSM Pharmaceutical Services and later China Gateway or China Partner to investigate NO-Cbl production. Those efforts generated additional knowledge but produced variable or limited results.

31. The repeated difficulty experienced by independent manufacturers demonstrated that reproducible manufacture depended on a confidential compilation of practical know-how beyond information generally known or readily ascertainable from public sources.

32. The trade secret information at issue includes nonpublic combinations of synthesis conditions, scale-up procedures, equipment configuration, vessel selection, gas handling, order of addition, timing, temperature, pressure, pH, atmosphere control, transfer methods, purification, isolation, analytical methods, quality-control criteria, stability conditions, deviations,

troubleshooting, yields, reproducibility information, storage, packaging, shipping, and related scientific and business information.

33. This information derives independent economic value from not being generally known or readily ascertainable by proper means because it permits a person possessing it to avoid failed experiments, shorten development time, reduce expense, and manufacture or evaluate NO-Cbl more effectively.

34. BRF and its predecessors took reasonable measures to preserve secrecy, including limiting disclosure to selected development partners, using written confidentiality and restricted-use obligations, directly supervising work on site, limiting access to assigned personnel, restricting subcontractors, and contractually controlling ownership and disposition of data and materials.

**B. The PharmaCore Agreement**

35. BNOAT selected PharmaCore to advance NO-Cbl manufacturing and analytical development after earlier manufacturing efforts produced inconsistent or limited results.

36. Dr. Bauer was provided an office at PharmaCore, and BNOAT funded a PharmaCore technician assigned to the NO-Cbl project.

37. PharmaCore issued Quotation No. 13517r4 on December 20, 2012 for non-GMP production of NO-Cbl.

38. PharmaCore issued Analytical Chemistry Quotation No. 13540 on January 15, 2013 covering HPLC method development, validation, release testing, stability studies, microbial testing, endotoxin testing, and certificate-of-analysis development.

39. PharmaCore issued Quotation No. 13603 on February 7, 2013 for GMP manufacture of NO-Cbl.

40. The quotations and incorporated terms and conditions formed a valid agreement between BNOAT and PharmaCore (the "Agreement"). A true and accurate copy of the Agreement is attached as **Exhibit A**.

41. Under Section A of the Agreement's Confidentiality/Ownership provisions, PharmaCore agreed to maintain in confidence and use only for BNOAT's project all information disclosed by, or developed for, BNOAT, subject only to stated exceptions. Ex. A, Confidentiality/Ownership § A.

42. PharmaCore further agreed not to use BNOAT's API, specifically NO-Cbl, other tangible materials supplied by BNOAT, or materials produced under the Agreement for any purpose other than performance of BNOAT's project. *Id.*

43. PharmaCore agreed not to provide BNOAT's API, any other materials supplied by BNOAT, or materials produced for BNOAT to any third party without BNOAT's prior written consent. *Id.*

44. Under Section C of the Agreement, all data, discoveries, materials, and inventions conceived or developed during and in connection with the project were works for hire belonging exclusively to BNOAT. Ex. A, Confidentiality/Ownership § C.

45. Under Section E of the Agreement, PharmaCore could not retain a subcontractor, consultant, or other nonemployee to perform services without BNOAT's prior express written approval and a writing binding that person to the Agreement's confidentiality and ownership terms. Ex. A, Confidentiality/Ownership § E.

46. Under Section F of the Agreement, the Agreement's principal confidentiality and ownership obligations survived its termination or expiration. Ex. A, Confidentiality/Ownership § F.

47. The Agreement required PharmaCore to maintain unused materials, samples, data, and compounds for six months after project completion and then destroy them unless BNOAT requested an alternate disposition.

48. BNOAT did not request that PharmaCore continue storing unused materials, samples, data, or compounds after the contractual six-month retention period and did not authorize PharmaCore to retain or use such materials thereafter.

49. Accordingly, under the Agreement, PharmaCore was required to destroy the retained materials, samples, data, and compounds following expiration of the six-month retention period.

50. The Agreement prohibited PharmaCore from assigning the Agreement, its obligations, or its services, in whole or in part, without BNOAT's prior written consent.

51. The Agreement is governed by Ohio law and contains an exclusive forum-selection clause for state and federal courts located in Akron, Ohio.

52. PharmaCore completed its NO-Cbl manufacturing campaign and issued a final report on February 18, 2013.

**C. Cambrex's Acquisition, Access, and Notice**

53. Cambrex later acquired PharmaCore. Upon information and belief, the acquisition gave Cambrex possession, custody, control, or access to PharmaCore's NO-Cbl project files, batch records, analytical records, samples, compounds, materials, electronic data, know-how, and personnel.

54. Cambrex knew or should have known from the face of the Agreement, project records, file markings, and the nature of the materials that the NO-Cbl information and materials

were BNOAT's trade secrets, belonged to BNOAT or its successor, and were subject to restrictions on use, disclosure, transfer, subcontracting, assignment, and disposition.

55. On June 30, 2021, Dr. Joseph A. Bauer contacted Brian Swierenga, Cambrex High Point's Vice President of Operations and Site Director, concerning an opportunity to evaluate a benchtop nitric oxide gas generator. A true and accurate copy of the June 30, 2021 email exchange between Dr. Bauer and Mr. Swierenga is attached as **Exhibit B**.

56. In response, Mr. Swierenga acknowledged Cambrex's prior NO-related work with Dr. Bauer, stating, "We have not been asked about NO since we worked with you before." *Id.*

57. On February 10, 2026, Dr. Bauer again contacted Cambrex concerning NO-Cbl-based synthesis, future NO-Cbl-related projects, electronic batch records, and protection of confidential NO-Cbl information.

58. Cambrex therefore had actual notice of BRF's asserted rights before the manufacturing and testing activity described below.

**D. The 2026 Manufacturing Activity**

59. In January 2026, Dr. Sam Galphin communicated with Dr. Michael Dunphy concerning NO-Cbl and a planned project involving Cambrex. A true and accurate copy of the relevant WhatsApp communications between Dr. Galphin and Dr. Dunphy is attached as **Exhibit C**.

60. On January 23, 2026, Dr. Galphin stated that there would be a "kick off" celebration the following week at "Cambrex, the manufacturer." *Id.*

61. On January 27, 2026, Dr. Galphin stated that he intended to allow Dr. Dunphy to speak with a biochemist at Cambrex. *Id.*

62. On March 20, 2026, Dr. Galphin stated: "We should be finishing the first manufacturing process today. Cambrex will analyze for specs in new product and some 10-year-old product." *Id.*

63. The reference to “10-year-old product” supports a reasonable inference that historical NO-Cbl material was retained, accessed, used, or tested in connection with the new manufacturing effort, even though BNOAT had not requested continued storage or authorized retention beyond the Agreement’s six-month retention period.

64. Upon information and belief, the new manufacturing campaign used or relied on BRF’s confidential compilation of process information, historical project records, project-generated data, samples, compounds, or other materials governed by the Agreement.

65. Upon information and belief, persons who were not authorized by BRF received access to BRF’s information or materials in connection with the new project.

66. BRF was also informed that NO-Cbl manufactured by or through Cambrex was intended to be transferred to Duke University or another third party for rodent anticancer studies.

67. BRF did not provide prior written consent for Cambrex, PharmaCore, Dr. Galphin, Duke University, or any other third party to use, possess, receive, test, manufacture, transfer, disclose, or exploit BRF’s trade secrets, confidential information andmaterials for the reported project.

68. On April 27, 2026, Dr. Dunphy stated that he had spoken with Dr. Bauer, that Dr. Bauer had concerns, and that Dr. Dunphy needed to pause until the concerns were resolved. Dr. Dunphy asked the company to respond to Dr. Bauer.

69. On April 28, 2026, Dr. Dunphy clarified that Dr. Bauer’s email had been directed to "Pharmacore or whoever bought them." Ex. C; p. 2.

70. These communications confirm that participants in the project understood that Dr. Bauer and BRF objected and that Cambrex or its PharmaCore affiliate needed to address BRF's rights before the project continued.

71. Despite BRF's requests, Cambrex has not provided BRF with complete batch records, electronic batch records, manufacturing records, analytical records, material-transfer records, chain-of-custody documents, recipient identities, disposition records, or written authorization relating to the reported manufacturing and transfer.

72. Cambrex's conduct has deprived BRF of control over its trade secrets, confidential information and materials, threatened disclosure to additional persons, impaired the secrecy and value of BRF's trade secrets, and caused damages in an amount to be determined at trial.

73. Unless restrained, Cambrex's continued possession, use, disclosure, or transfer of BRF's trade secrets and materials will cause ongoing and irreparable harm because disclosure or dissemination of confidential manufacturing know-how cannot be fully remedied through money damages alone.

**E. Identification of BRF's Trade Secrets**

74. BRF's trade secrets consist of nonpublic scientific, technical, manufacturing, analytical, and business information relating to NO-Cbl, including the following categories and their confidential combination:

(a) synthesis methods, reaction conditions, process sequence, and order of addition;

(b) scale-up procedures, manufacturing parameters, equipment configuration, and vessel selection;

(c) nitric-oxide gas handling, transfer, pressure, atmosphere, timing, temperature, and pH controls;

(d) purification, isolation, handling, storage, packaging, and shipping methods;

(e) analytical methods, HPLC methods, specifications, quality-control data, stability information, release criteria, and certificates of analysis;

(f) batch records, electronic batch records, yields, deviations, investigations, corrective actions, troubleshooting, failed approaches, and reproducibility data;

(g) project-generated data, discoveries, materials, inventions, samples, compounds, and related ownership and disposition information;

(h) the compilation of accumulated know-how derived from the development and scale-up history; and

(i) other confidential scientific, technical, and business information disclosed to or developed by PharmaCore for BNOAT.

75. The trade secrets are sufficiently identified at the pleading stage without publicly disclosing their operative details. BRF will provide a more particularized identification under an appropriate protective order.

76. The trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce, including the development, manufacture, testing, licensing, and proposed study of a pharmaceutical compound across state lines.

## COUNT I
## Misappropriation of Trade Secrets Under the Defend Trade Secrets Act
## 18 U.S.C. §§ 1836 through 1839

77. BRF repeats and realleges Paragraphs 1 through 74 as if fully rewritten herein.

78. BRF owns the trade secrets identified above as BNOAT's successor in interest and by operation of the Agreement's ownership provisions.

79. The trade secrets consist of financial, business, scientific, technical, economic, and engineering information that BRF has taken reasonable measures to keep secret and that derives independent economic value from not being generally known or readily ascertainable through proper means.

80. The trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce.

81. Cambrex acquired the trade secrets knowing or having reason to know that the information was obtained from BNOAT, BRF, or PharmaCore under circumstances giving rise to duties to maintain secrecy and restrict use.

82. Cambrex used or disclosed the trade secrets without BRF's consent and knew or had reason to know that its knowledge of the trade secrets was derived through persons owing duties to BNOAT or BRF, was acquired under circumstances giving rise to such duties, or was subject to contractual restrictions on use and disclosure.

83. Cambrex's unauthorized acquisition, retention, use, disclosure, and transfer constitute misappropriation under 18 U.S.C. § 1839(5).

84. Cambrex's misappropriation was willful and malicious because Cambrex acted after actual notice of BRF's ownership and confidentiality claims and continued or permitted the challenged activity without obtaining BRF's written consent.

85. As a direct and proximate result, BRF has suffered actual loss, loss of control, impairment of secrecy, and other damages, and Cambrex has obtained benefits and avoided development costs in amounts to be proven.

86. BRF is entitled to injunctive relief, damages for actual loss and unjust enrichment not otherwise included in actual loss, exemplary damages, attorneys' fees, costs, and all other relief authorized by 18 U.S.C. § 1836(b)(3).

**COUNT II**
**Misappropriation of Trade Secrets Under the Ohio Uniform Trade Secrets Act**
**Ohio Rev. Code §§ 1333.61 through 1333.69**

87. BRF repeats and realleges Paragraphs 1 through 84 as if fully rewritten herein.

88. The information identified above constitutes trade secrets under Ohio Rev. Code § 1333.61(D) because it derives independent economic value from not being generally known or readily ascertainable by proper means and has been the subject of reasonable efforts to maintain secrecy.

89. Cambrex acquired, disclosed, or used BRF's trade secrets without consent and knew or had reason to know that the information was acquired by improper means, derived through a person owing a duty to maintain secrecy or limit use, or obtained under circumstances giving rise to such a duty.

90. Cambrex's conduct constitutes misappropriation under Ohio Rev. Code § 1333.61(B).

91. Cambrex's misappropriation was willful and malicious.

92. As a direct and proximate result, BRF has suffered actual loss and other damages, and Cambrex has been unjustly enriched in amounts to be proven.

93. BRF is entitled to temporary, preliminary, and permanent injunctive relief under Ohio Rev. Code § 1333.62; damages under § 1333.63; exemplary damages and attorneys' fees under §§ 1333.63(B) and 1333.64; and all other available relief.

## COUNT III
**Breach of Contract**

94. BRF repeats and realleges Paragraphs 1 through 91 as if fully rewritten herein.

95. The Agreement is a valid and enforceable contract supported by consideration.

96. BNOAT performed its obligations under the Agreement or was excused from further performance.

97. BRF succeeded to BNOAT's rights under the Agreement, including the surviving confidentiality, ownership, restricted-use, non-transfer, subcontracting, assignment, and materials-disposition provisions.

98. Upon information and belief, Cambrex is bound by the Agreement because it expressly or impliedly assumed PharmaCore's contractual obligations, acquired and continued the relevant business and project, operates through or controls the contracting PharmaCore entity, accepted benefits under the Agreement, or is otherwise liable as PharmaCore's successor.

99. Cambrex and/or its PharmaCore affiliate materially breached the Agreement by one or more of the following acts: Using BNOAT or BRF information for a project other than BNOAT's project; using BNOAT's API, supplied materials, or project-produced materials for an unauthorized purpose; providing information or materials to a third party without prior written consent; permitting an unauthorized consultant, subcontractor, or nonemployee to perform services; retaining or using materials contrary to the disposition provisions; failing to recognize BNOAT's or BRF's exclusive ownership of project-generated data, discoveries, materials, and inventions; or assigning obligations or services without consent.

100. BRF did not authorize or waive the breaches.

101. The breaches have caused BRF damages in an amount to be determined at trial, including loss of control over proprietary rights, investigative and remediation costs, diminution in trade-secret value, lost licensing or commercial opportunities, and other recoverable damages.

102. The Agreement's limitation of liability concerning errors or omissions in performance does not bar BRF's claims based on intentional unauthorized use, disclosure, transfer, retention, violation of surviving confidentiality and ownership obligations, or conduct outside performance of the authorized project.

103. BRF is entitled to damages, specific performance, injunctive relief enforcing the surviving restrictions, an accounting, and other appropriate relief.

**COUNT IV**
**Declaratory Judgment**
**28 U.S.C. §§ 2201 and 2202**

104. BRF repeats and realleges Paragraphs 1 through 101 as if fully rewritten herein.

105. An actual and substantial controversy exists concerning ownership, possession, confidentiality, use, disclosure, transfer, and disposition of NO-Cbl information, data, samples, compounds, materials, and project-generated property.

106. BRF contends that it owns the trade secrets and succeeded in BNOAT's contractual and proprietary rights; that the Agreement's confidentiality and ownership obligations remain enforceable; and that Cambrex lacks authority to use, disclose, transfer, manufacture from, test, or exploit BRF's information or materials outside the authorized BNOAT project.

107. Cambrex's reported manufacturing and testing activity, its possession or control of historical project information or materials, and its failure to provide the requested records create a present dispute requiring judicial resolution.

108. BRF is entitled to declarations that: (a) BRF owns the asserted trade secrets and BNOAT's project-generated data, discoveries, materials, and inventions; (b) the Agreement's surviving confidentiality and ownership restrictions remain enforceable; (c) Cambrex and persons acting through it may not use, disclose, transfer, test, manufacture from, or exploit the protected information or materials without BRF's authorization; and (d) Cambrex must account for and appropriately preserve, segregate, return, or destroy BRF-owned information and materials as the Court determines.

109. Further relief is necessary and proper under 28 U.S.C. § 2202.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bauer Research Foundation, Inc. respectfully requests judgment in its favor and against Defendant Cambrex Corporation, and requests that the Court:

A. Enter temporary, preliminary, and permanent injunctive relief prohibiting Cambrex and persons acting in concert with it from using, disclosing, transferring, testing, manufacturing from, or exploiting BRF's trade secrets, confidential information, and materials without authorization;

B. Order Cambrex to preserve all documents, electronically stored information, tangible materials, samples, compounds, and other evidence relating to NO-Cbl, the BNOAT or PharmaCore project, the reported manufacturing activity, and any use, testing, disclosure, transfer, storage, or disposition of the information or materials at issue;

C. Order Cambrex to provide an accounting identifying the persons and entities to whom the disputed information or materials were disclosed or transferred and

describing the manufacture, testing, use, transfer, storage, and disposition of such information or materials;

D. Order Cambrex to segregate and cease use of all disputed information and materials pending final adjudication;

E. Following completion of all applicable litigation-preservation obligations, order Cambrex to return to BRF, or destroy under appropriate supervision, all BRF-owned information and tangible materials in Cambrex's possession, custody, or control, except to the extent the Court determines that continued preservation is necessary;

F. Declare the parties' rights and obligations as requested in Count IV;

G. Award BRF its actual damages, Cambrex's unjust enrichment to the extent not included in actual damages, restitution, and disgorgement as permitted by law;

H. Award exemplary damages for willful and malicious misappropriation as authorized by federal and Ohio law;

I. Award BRF its reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1836(b)(3)(D), Ohio Rev. Code § 1333.64, the Agreement, or other applicable law;

J. Award pre-judgment and post-judgment interest;

K. Order an accounting of Cambrex's manufacture, testing, use, disclosure, transfer, receipts, avoided development costs, revenues, and benefits relating to the challenged conduct; and

L. Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

BRF demands a trial by jury on all issues so triable, by the maximum number of jurors permitted by law.

Respectfully submitted,

*/s/ Joshua D. Villers*
Barry Y. Freeman (0062040)
Joshua D. Villers (0105514)
Roetzel & Andress, LPA
1375 E. 9th Street, 30th Floor
Cleveland, OH 44114
Telephone: (312) 741-0786
Facsimile: (216) 623-0134
Email: bfreeman@ralaw.com
jvillers@ralaw.com

*Counsel for Plaintiff Bauer Research Foundation, Inc.*